AO 91 (Rev. 11/11)  Criminal Complaint (approved by AUSA Michelle L. Morgan        )        USAO CW No. 26-027

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Pennsylvania

| | |
|---|---|
| United States of America<br>v.<br><br><br><br><br>Stephen Michael Cilurso<br><br>*Defendant(s)* | )<br>)<br>)  Case No.  26-mj-506<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  **5/8/2023 through 3/16/26**  in the county of  **Delaware**  in the
**Eastern** District of **Pennsylvania** , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2261A(2)(B)<br>18 U.S.C. 1512(d) | Stalking through use of the mail<br>Witness tampering |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

JUSTIN LYNCH    Digitally signed by JUSTIN LYNCH
Date: 2026.03.23 07:21:04 -04'00'
_____
*Complainant's signature*

USPIS Inspector Justin Lynch
_____
*Printed name and title*

Sworn to before me and signed by telephone.

Digitally signed by Caroline
Goldner Cinquanto
Date: 2026.03.23 09:59:02 -04'00'

Date: _____
_____
*Judge's signature*

City and state:        Philadelphia, Pennsylvania        Honorable Caroline Goldner Cinquanto, U.S. Magistrate Judge
_____
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**APPLICATION FOR CRIMINAL COMPLAINT AND ARREST WARRANT**

**26-mj-506**

I, Justin Lynch, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.       I am a United States Postal Inspector with the United States Postal Inspection Service ("USPIS"). I have been employed as a Postal Inspector with the USPIS Philadelphia Division since May 2023 and am currently assigned to a USPIS team that investigates mail fraud and violent crimes. I am also assigned to a Federal Bureau of Investigation ("FBI") Joint Terrorism Task Force ("JTTF") and conduct investigations related to the mailing of dangerous and threatening communications.  Prior to serving as a U.S. Postal Inspector with USPIS, I was employed as a Special Agent with the U.S. Postal Service – Office of Inspector General ("USPS-OIG") for approximately four years. Prior to serving as a Special Agent with USPS-OIG, I was employed as Special Agent with the U.S. Department of the Treasury – Inspector General for Tax Administration ("TIGTA") for approximately five years.  As a U.S. Postal Inspector and Special Agent with USPS-OIG and TIGTA, I have participated in numerous investigations involving violent crimes, allegations of mail theft and fraud, the mailing of threatening communications, bank fraud, and identity theft.

2.       I make this affidavit in support of an application in support of a criminal complaint and arrest warrant for STEPHEN MICHAEL CILURSO ("CILURSO"),  home address on Magnolia Ave, Aldan, PA 19018, based on probable cause that between on or about May 8, 2023 and on or about March 16, 2026, he violated 18 U.S.C. § 2261A(2)(B) (stalking through use of the mail); and on or about March 16, 2026, he violated 18 U.S.C. § 1512(d) (witness tampering), as more fully described below and set forth in Attachment A.

3.	As a federal agent, I am authorized to investigate violation of the laws of the United States, including investigations involving the mails, facilities of interstate communication, and violent crime under Title 18. I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

4.	The facts in this affidavit come from my personal observations, my training and experience, and information from other agents, witnesses, and records. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Unless specifically indicated, all conversations and statements described in this affidavit are related in substance and in part. However, unless specifically indicated, all of the materials quoted in this affidavit bear the same spelling, punctuation, and grammar as found in the originals of these records. Where I assert that an event took place on a particular date and/or at a particular time, I am asserting that it took place on or about that date and/or time. Where I assert that an event occurred a certain number of times, I am asserting that it occurred approximately that many times.

## JURISDICTION

5.	This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. §§ 2711, 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## APPLICABLE STATUTES

6.	Under 18 U.S.C. § 2261A(2)(B), it is a crime, "with the intent to kill, injure, harass, intimidate, or place under surveillance with the intent to kill, injure, harass, or intimidate another person, [to] use[] the mail . . . or any other facility of interstate . . . commerce to engage

in a course of conduct that (B) causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to [a person, their immediate family member, or their spouse or intimate partner]." "Course of conduct" is defined as "a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose." 18 U.S.C. § 2266(2).

7.      Under 18 U.S.C. § 1512(d), it is a crime to "intentionally harass[] another person and thereby hinder[], delay[], prevent[] or dissuade[] any person from – (1) attending or testifying in an official proceeding; (2) reporting to a law enforcement officer . . . the commission or possible commission of a Federal offense . . . ; (3) . . . seeking the arrest of another person in connection with a Federal offense; or (4) assisting in [a criminal prosecution] or proceeding . . ..". "Official proceeding" is defined to include a proceeding before a court of the United States or a Federal grand jury. 18 U.S.C. § 1515(a)(1).

**<u>FACTS SUPPORTING PROBABLE CAUSE</u>**

8.      On or about September 23, 2025, the Philadelphia Police Department ("PPD") contacted the USPIS regarding a criminal investigation involving the U.S. Mails. A detective assigned to the PPD Southwest Detectives Division informed the USPIS that he began investigating a threats case on September 22, 2025, involving "Company A," a major network news affiliate in Philadelphia, PA, known to your affiant. The victim was identified as a Company A broadcaster known professionally on air under a pseudonym, and whose true identity is known to your affiant, referred to herein as "Victim 1." Victim 1 told PPD that he had received threatening mailings since approximately May 2023. Victim 1 advised that the threatening mailings contained repeated derogatory homophobic slurs against him because of the fact that he is homosexual. Victim 1 contacted PPD after receiving the most recent threatening mailing, described below. Company A's security group provided PPD with copies of threatening

mailings previously received by Victim 1. PPD noted one of the previous letters threatened Victim 1 by questioning if his "fag boyfriend" would receive custody of their children if something happened to him and to "watch [his] back."

### The September 2025 Letter

9.    On September 15, 2025, an envelope sent to Victim 1 addressed to Company A's television studio in Philadelphia, PA, was processed by the United States Postal Service ("USPS") at the Philadelphia, PA Processing & Distribution Center ("P&DC") as evidenced by the cancellation mark on the stamp (hereinafter, the "September 2025 Letter"). The Philadelphia P&DC processes outgoing collection mail for ZIP code prefixes 189, 190, 191, and 194, meaning all outgoing mail collected from ZIP codes that start with those numbers is cancelled at the Philadelphia, P&DC. Thus, the sender of the September 2025 letter mailed the letter from a region in Pennsylvania within ZIP codes 189-191 or 194. There was no return address on the envelope. The destination name and address on the front of the envelope were handwritten in cursive.

10.    On or about September 17, 2025, the September 2025 letter addressed to Victim 1 was delivered to Company A's television studio. The September 2025 letter was typewritten and contained repeated use of the homophobic slur "FAGGOT" in all capital letters. The September 2025 letter also contained the true first name of Victim 1's husband and made multiple graphic references to sexual activities between Victim 1 and his husband. Finally, the conclusion of the September 2025 letter stated, "I hope what happened to Charlie Kirk happens to you, FAGGOT." Your affiant is aware that Charlie Kirk was a political activist who was shot in the neck and killed while on stage speaking in public on September 10, 2025, approximately one week before Victim 1 received this letter.

**Interview with Victim 1**

11.     On or about September 25, 2025, after being contacted by PPD, your affiant interviewed Victim 1 along with FBI Special Agent Pauline Pogorzelski. Victim 1 advised he had received periodic eccentric mailings for years that referenced his sexuality and contained derogatory terms for the LGBT community. Victim 1 said he tried to ignore the mailings but could not do so any longer after he received the September 2025 letter. Victim 1 advised the September 2025 letter made him fear for his safety to the point that he requested a security escort to his vehicle the night of September 17, 2025, and called out of work the next day, which meant he did not go on Company A's news broadcast. Victim 1 stated that due to his public profile, it would not be hard to target him, his husband, or his children. Victim 1 advised he felt like his life was in imminent danger after receiving the September 2025 letter and that the letter caused him to purchase and have security cameras installed around his house. Finally, Victim 1 said several of the letters he had received apparently from this same sender referenced his children, including one which asked if his "boyfriend" would get custody of the children if something bad happened to him. At the conclusion of the interview, Victim 1 turned over additional threatening mailings to law enforcement that he believed had come from the same sender. They are described below.

**December 2024/January 2025 Letters**

12.     Your affiant reviewed two undated, typewritten, one-page letters, each of which were stored in a drawer by Company A, and therefore associated, with one of three envelopes that were postmarked on December 14, 2024, December 24, 2024, and January 10, 2025, respectively and addressed to Victim 1 (under his pseudonym) at Company A. The first letter stated the following: "I have been raising and breeding non-venomous snake [sic] to release into your garden and flower beds. Now thanks to social media I know where you live. Surprise, we

are not so far apart. Oh, by the way, I hate FAGGOTS." The letter also contained graphic references to sexual acts between Victim 1 and his husband. The second letter contained graphic references to sexual acts between Victim 1 and his husband and stated the following: "Oh by the way the snakes are doing great. Many babies." Each of the two mailings included black and white pictures of snakes printed on separate pages.

13.     Company A's security group was not sure which letter corresponded to which envelope for these two mailings. All three envelopes were processed and cancelled at the USPS Philadelphia P&DC. Thus, the sender of the December 2024/January 2025 letters mailed the letters from a region in Pennsylvania within ZIP codes 189-191 and 194. There was no return address on any of the envelopes. The destination name and address on the front of the envelopes, which was to Victim 1 (under his pseudonym) at Company A, were handwritten, with two being in cursive and one in block print.

**May 2023 Letter**

14.     Your affiant reviewed a letter handwritten in cursive that stated the following: "Yo [Victim 1's first name] - How's Philly's favorite fag? Just saw you with your kids. Does your fag boyfriend get custody of them if something bad happens to you? Just asking. Watch your back queer-boy."

15.     The letter described above was contained within an envelope that was processed and cancelled at the Philadelphia P&DC on May 8, 2023. Thus, the sender of the May 2023 letter mailed the letter from a region in Pennsylvania within ZIP codes 189-191 and 194. There was no return address on the envelope. The destination name and address on the front of the envelope, which was to Victim 1 (under his pseudonym) at Company A, was handwritten in block letters.

**May 2019 Letter**

16.    Your affiant reviewed a letter handwritten in block letters that stated the following: "Yo [Victim 1's first name]- How's Philly's fav. fag? Just saw you with your kids, when they kiss you on mouth [sic] do you think they taste your B.F.'s ****? Just askin."

17.    The letter described above was contained within an envelope that was processed and cancelled at the Philadelphia P&DC on May 31, 2019. Thus, the sender of the May 2019 letter mailed the letter from a region in Pennsylvania within ZIP codes 189-191 and 194. There was no return address on the envelope. The destination name and address on the front of the envelope, which was to Victim 1 (under his pseudonym) at Company A, was handwritten in block letters.

**Laboratory Analysis and Subject Identification**

18.    In or around early October 2025, your affiant submitted the September 2025 letter and envelope, the two undated letters referencing snakes, and the three envelopes with stamp cancellations of December 14, 2024, December 24, 2024, and January 10, 2025, to the USPIS forensic laboratory for fingerprint processing. The goal of the forensic laboratory analysis was to identify and develop latent fingerprints, and submit the results, if any, to the FBI's Automated Fingerprint Identification System (AFIS) database.

19.    On or about December 22, 2025, your affiant received a USPIS forensic laboratory report regarding the submission of the evidence described above. The report identified that nine latent fingerprints of value were identified on the evidence submitted. Three of the identified fingerprints belonged to an individual named Stephen Michael Cilurso ("CILURSO"), which were matched to CILURSO in AFIS based on his FBI number. CILURSO's fingerprints were recovered from the following locations on the mailings: from the adhesive side of a piece of

tape removed from an envelope that was cancelled by USPS on January 10, 2025, from the underside of the flap where the envelope seals on that same envelope, and from one of the December/January 2025 letters that referenced snakes.

20. Once CILURSO was identified, your affiant utilized law enforcement and USPS databases to determine that CILURSO resides on Magnolia Ave, Aldan, PA 19018. Your affiant noted that this address is within the viewing area of Company A's news broadcast in which Victim 1 is a broadcaster. Your affiant also noted that CILURSO resides within ZIP code prefix 190, which is serviced by the USPS Philadelphia P&DC. All threat mailings received by Victim 1 at Company A were mailed from the USPS processing area in which CILURSO resides.

**Related Conduct**

21. Once CILURSO was identified, your affiant obtained CILURSO's criminal history. As set forth below, CILURSO has been identified in four other harassment/threat/stalking investigations involving public figures like the victim in this case – and in some of those cases, CILURSO has been prosecuted and convicted.

22. According to the criminal history result, CILURSO was arrested by Montgomery County, PA detectives on or around April 9, 2021, and charged with harassment. Your affiant conducted open-source internet research on CILURSO after discovering his criminal history and noted that the search results contained multiple articles from both Pennsylvania and national news sources documenting CILURSO's arrest for leaving a series of repeated harassing and lewd voicemail messages for sitting United States Congresswoman referred to herein as "Victim 2," whose true identity is known to your affiant.

23. On or around April 12, 2021, a Montgomery County, Pennsylvania District Attorney's Office press release on CILURSO's arrest identified that CILURSO left 19 harassing

voicemails for Victim 2 that were subsequently traced back to CILURSO. The voicemail messages contained vulgar, obscene, and sexually explicit language directed at Victim 2, similar to the mailings sent to Victim 1 at Company A. The press release also stated the last harassing message CILURSO left for Victim 2 occurred after CILURSO had been instructed by law enforcement to cease contacting Victim 2.

24.     Your affiant has reviewed the Montgomery County affidavit of probable cause associated with the criminal charges in this matter, which quotes transcripts of the calls made by CILURSO to Victim 2. Among other things, on February 11, 2021, CILURSO, as if mocking Victim 2, stated, "oh I'm so scared, . . . oh please come rape me . . . Somebody please come f**kin rape me. . . "  In another call that same day, CILURSO stated, "Hey you were just hoping somebody come f**k you in your fat f**kin a**. Cause that's what you got. A fat f**kin a** and a big f**kin mouth. Don't worry, God's gonna make you pay, you little b*tch. God will make you pay." Later the same day, CILURSO left two separate voicemails referencing Victim 2's granddaughter by name and referencing engaging in crude sexual acts with her.

25.     According to sentencing information obtained from the Montgomery County District Attorney's Office, on or around January 30, 2023, CILURSO pled guilty to four counts of Harassment in Montgomery County District Court for his conduct towards Victim 2. CILURSO was sentenced to 90 days' probation per count with all four terms to be served consecutively (360 days total). CILURSO was also instructed to have no contact with Victim 2, her family, her office, or any United States Congressional office.

26.     Reports from the Montgomery County Detective Bureau show that on or around March 6, 2025, just over one year from finishing probation, the Montgomery County Detective Bureau was contacted by a Congressional staff member for Victim 2. The staff member

forwarded a voicemail that was received at Victim 2's office of a male individual speaking in an aggressive manner who made derogatory remarks towards Victim 2. Victim 2's staff recognized the caller's voice as CILURSO and advised that CILURSO had been arrested previously in April 2021 for harassing Victim 2. A Montgomery County detective spent approximately one month trying to reach CILURSO, but CILURSO refused to speak with law enforcement. On or around April 9, 2025, CILURSO finally began corresponding with the Montgomery County detective via email. CILURSO was warned that any further contact with Victim 2 would result in being criminally charged again. CILURSO responded that he would not contact Victim 2 again.

27.     Once CILURSO was identified, your affiant provided his identifiers to the FBI, who searched within their case management system. CILURSO was identified as the subject of the following matter which was reported to the FBI by the United States Capitol Police ("USCP"):

   a.  On or around April 8, 2019, an individual who identified himself as "Steve" utilized phone number 610-931-6379 to contact the public comment line for a United States Congresswoman whose true identity is known to your affiant, referred to herein as "Victim 3." "Steve" left a graphic sexually explicit voicemail threatening to rape Victim 3. The USCP filed an exigent request with Sprint for the subscriber information and geolocation of the phone number ending in x-6379. The exigent request subscriber information identified that the phone number ending in x-6379 was registered to CILURSO at his home address. The exigent request geolocation information identified that the call was placed from a set of GPS coordinates in Aldan, PA. The USCP conducted a map inquiry

for the distance from the geolocation of the phone call to CILURSO's home address and the results indicated that the call was placed 26 feet from CILURSO's home address. The graphic sexual nature of the threat to Victim 3 is similar to the mailings sent to Victim 1. at Company A.

28.    On or about January 28, 2026, an updated criminal history was run on CILURSO which revealed that the New Jersey State Police ("NJSP") had recently obtained an arrest warrant for CILURSO. The arrest warrant was issued on or about January 22, 2026, and charged CILURSO with Stalking and Harassment for engaging in a course of conduct in which at least 14 voicemails were left by CILURSO with the office of a former United States Congresswoman whose true identity is known to your affiant and is referred to herein as "Victim 4." Victim 4 is now a government official in the State of New Jersey. Pursuant to a state grand jury subpoena, CILURSO was identified through Comcast records as the subscriber for phone number 267-542-4626, which was used to repeatedly call and harass Victim 4. CILURSO's harassing voicemail messages contained sexually explicit comments about Victim 4 and derogatory statements about Victim 4's children, which caused Victim 4 to fear for her safety. The probable cause listed on the arrest warrant also referenced the fact that CILURSO had been previously arrested for a similar course of conduct against Victim 2. The graphic sexually explicit nature of the phone calls to Victim 4 and the fact that the phone calls referenced Victim 4's children is similar to the threatening mailings sent to Victim 1 at Company A.

29.    On or about January 28, 2026, CILURSO was arrested by the United States Marshals Service ("USMS") at his home address on the outstanding arrest warrant issued by the NJSP. According to the USMS, CILURSO stated that he resides at his home address by himself, does not have any family, and no one else would have access to his property.

30.    Your affiant contacted the United States Marshal Service and NJSP in regard to CILURSO's recent arrest in Pennsylvania. Through those contacts, your affiant learned that CILURSO was extradited to New Jersey to Essex County Correctional Facility and his change of plea hearing was scheduled for March 2, 2026. NJSP indicated that they did not obtain a search warrant for the contents of CILURSO's phone and would be returning his cellular phone to him upon his release.

**March 2026 Law Enforcement Encounters with CILURSO**

31.    On March 3, 2026, U.S. Postal Inspectors and FBI Special Agents executed a search warrant at CILURSO's residence located in Aldan, PA. During the judicially authorized search, investigators seized all of CILURSO's electronic devices and forms of electronic storage media. Forensic imaging of these devices is currently ongoing, and their contents are not yet available to agents for review. During the course of the search, CILURSO, who was not in custody, agreed to be interviewed by your affiant and FBI Special Agent Pauline Pogorzelski. During that consensual interview, CILURSO provided the following information:

      a.  CILURSO admitted to sending threatening letters to Victim 1, and to targeting Victim 1 specifically because of his sexuality. CILURSO admitted to being the author of a letter mailed in September 2025 that referenced wanting Victim 1 murdered publicly like Charlie Kirk. CILURSO also admitted to being the author of multiple threatening mailings that referenced snakes being released on Victim 1's property. In regard to why the snake letters were mailed, CILURSO stated he saw a Company A news segment where Victim 1 revealed on the air that he is deathly afraid of snakes. CILURSO thought Victim 1's fear of snakes

was funny, so he began mailing threatening communications to Victim 1 indicating he was planning to release snakes at Victim 1's residential property.

b.  In regard to why he sent the letters referenced above, CILURSO said, "I find it disgusting. God said a marriage is between a man and a woman, not a man and a man, not between a female and a female." CILURSO then said, "I find it disgusting when I see males on TV commercials sucking face. It disgusted me. It's just who I am."

c.  CILURSO admitted to watching Company A's news broadcast daily, which is how he became familiar with Victim 1. CILURSO then researched Victim 1 to determine the name of Victim 1's husband, which he explicitly referenced in multiple mailings.

d.  CILURSO admitted to having spent the past five weeks in jail, both in Pennsylvania and New Jersey, as a result of his actions for repeatedly calling and threatening Victim 4.

e.  CILURSO admitted that he also has issues with the African-American community and that he owned a gun because of them, despite not liking firearms. The presence of African-Americans in his neighborhood led CILURSO to purchase a firearm approximately seven or eight years ago.

f.  Asked if he had made threats to anyone else recently besides Victim 1 and Victim 4, and if he had threatened anyone because of their skin color, CILURSO admitted that he hates a specific U.S. Senator, whose identity is known to your affiant, referred to herein as "Victim 5." CILURSO said

he has called the office of Victim 5 multiple times and that he targeted Victim 5 in part because of his race. CILURSO said he called Victim 5 a "n*****" in these phone calls.

32.    On March 5, 2026, your affiant received information from NJSP regarding an active criminal investigation into CILURSO for threatening Victim 5. According to the NJSP report, CILURSO's racially motivated voicemails stated 2026 would be Victim 5's last year on earth and that CILURSO would love to watch or see on the news that Victim 5 got shot, stabbed to death, hit by a car or truck, suffocated, or strangled. In a post-arrest interview with NJSP Troopers, CILURSO stated Victim 5 was the U.S. Congressional member whom he hated the most.

33.    On March 17, 2026, your affiant and FBI Special Agent Pauline Pogorzelski served CILURSO with a grand jury subpoena from the U.S. District Court for the Eastern District of Pennsylvania for handwriting exemplars. After CILURSO accepted the subpoena, he referenced the fact that he had just sent four additional letters to Victim 1 apologizing to him. CILURSO was explicitly warned by your affiant not to contact Victim 1 again.

**March 2026 Letters from CILURSO to Victim 1**

34.    On March 19, 2026, your affiant was informed by an Executive Producer at Company A that three letters addressed to Victim 1 had been received at Company A's news studio. Your affiant retrieved the letters. All three letters had a pre-printed return label affixed to them from "Mr. Stephen M. CILURSO – [  ] Magnolia Ave, Aldan, PA 19018-4214," and were addressed to Victim 1 under his pseudonym at Company A in cursive handwriting. All three of the letters were typewritten and signed "Stephen CILURSO." Review of the letters provided the following information:

a. Letter 1 – Cancelled by USPS on March 10, 2026 – This letter contained an admission to Victim 1 that CILURSO was the individual who wrote him multiple letters "years ago." CILURSO apologized and also admitted to being arrested on January 28, 2026, for sending disturbing messages to Victim 4. CILURSO then repeatedly dissuaded Victim 1 from having any involvement in the investigation or prosecution of CILURSO, making statements like, "help me out of this nightmare. Please ask the FBI to drop any future charges against me." CILURSO added, "don't let me go back to jail again. I will donate a monetary amount to your favorite charity on your behalf. . . . don't let me go to jail again and be away from my 3 remaining cats. I love my cats as you love your two beautiful children [child's first name] and [child's first name]." CILURSO also wrote "Please Mr. [pseudonym] ask the FBI to stop perusing [sic] me. I can never repay you. My life is now in your hands." Your affiant knows from public source inquiries that the two names of children referenced by CILURSO in this writing are in fact the correct and true first names of Victim 1's children.

b. Letter 2 – Cancelled by USPS on March 11, 2026 – This letter contained another admission that CILURSO was the individual who sent Victim 1 multiple threatening letters. This letter stated, "I am the scumbag who wrote you at least two different letters to you disrespecting your sexuality." CILURSO then again dissuaded Victim 1 from being involved in any criminal investigation. CILURSO wrote "Mr. [pseudonym], I don't

ever want to go back in jail again. . . . please drop any legal issues against me . . . . I sent you pictures of snakes because I saw how scarred [sic] you are of them."

    c.  Letter 3 – Cancelled by USPS on March 14, 2026 – In this letter CILURSO again dissuaded Victim 1 from any involvement in the criminal investigation of him. CILURSO wrote, "Mr. [pseudonym], I am begging and pleading with you once again sir to not let me go back to federal prison and be away from my cats once again. I love my cats as you and [husband's first name] your husband love [child's first name] and [child's first name]." Again, your affiant knows from public source inquiries that these redacted names, respectively, are the correct and true first name of Victim 1's husband and the correct and true first names of Victim 1's two children.

35.    On March 20, 2026, your affiant was informed by an Executive Producer at Company A that a fourth letter addressed to Victim 1 had been received at the Company A news studio. Your affiant retrieved this letter the same day. The letter had the same pre-printed return label from "Mr. Stephen M. CILURSO – [    ] Magnolia Ave, Aldan, PA 19018-4214," and was addressed to Victim 1 at Company A in handwritten cursive. Handwritten on the back of the envelope over the flap to seal it closed was "PLEASE MR. [PSEUDONYM]!" This letter was cancelled by USPS on March 16, 2026. This envelope contained two typewritten letters. Review of Letter #4 provided the following information:

    a.  This letter contained another admission that CILURSO was the individual who sent Victim 1 threatening letters. CILURSO then again dissuaded

Victim 1 from participating in any criminal investigation of him. CILURSO wrote, "This is now the 4th letter I am writing to you begging your forgiveness to my past digressions. In one of those letters I first wrote to you I said that I wish someone would shoot you just like they did to Charlie Kirk. I said that when I was in a very bad place. I was distraught that Mr. Kirk was killed. The FBI when they raided my house on March 2nd told me you feared for your life along with [husband's name] and [child's name] and [child's name]." CILURSO continued, "Please Mr. [pseudonym], don't let me go back to jail again" and "I beg of you Mr. [pseudonym], please drop the charges against me. . . .  I will come to your station and kiss your feet along with [husband's name] . . .". Your affiant knows from public source inquiries that two of the redacted names referenced by CILURSO in this writing are in fact the correct and true first names of Victim 1's children, while the third is the correct and true first name of Victim 1's husband.

**CONCLUSION**

36.    Based on the foregoing, I respectfully submit that there is probable cause to believe that between on or about May 8, 2023 through on or about March 16, 2026, STEPHEN MICHAEL CILURSO violated 18 U.S.C. § 2261A(2)(B) (stalking through use of the mail); and on or about March 16, 2026, he violated 18 U.S.C. § 1512(d) (witness tampering), as further described in Attachment A; and I therefore respectfully request that the Court authorize a criminal complaint and arrest warrant for STEPHEN MICHAEL CILURSO.

37.     I further respectfully request that the accompanying application for criminal complaint and arrest warrant and related documents be placed under seal and separately a motion to seal and proposed order are provided.

Respectfully submitted,

*/s/ Justin Lynch*
Justin Lynch
U.S. Postal Inspector

Sworn to me over the telephone and signed
By me pursuant to Fed. R. Crim. P. 4.1
On this _____ day of March, 2026.

Digitally signed by Caroline
Goldner Cinquanto
Date: 2026.03.23 10:01:58 -04'00'

HONORABLE CAROLINE GOLDNER CINQUANTO
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

Count 1 – Title 18, United States Code, Section 2261A(2)(B)

Between on or about May 8, 2023 and on or about March 16, 2026, STEPHEN MICHAEL CILURSO, with the intent to kill, injure, harass, intimidate, or place under surveillance with the intent to kill, injure, harass, or intimidate another person, used the mail or any other facility of interstate commerce to engage in a course of conduct that caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to a person, their immediate family member, or their spouse or intimate partner.

Count 2 – Title 18, United States Code, Section 1512(d)

On or about March 16, 2026, STEPHEN MICHAEL CILURSO intentionally harassed another person and thereby hindered, delayed, prevented or dissuaded such person from attending or testifying in an official proceeding; reporting to a law enforcement officer the commission or possible commission of a Federal offense; seeking the arrest of another person in connection with a Federal offense; or assisting in a criminal prosecution or proceeding.